## TAUNTON GARDENS COMPANY
### v.
### Carla A. HILLS et al.
### Civ. A. No. 75–2412–C.

United States District Court,
D. Massachusetts.
June 26, 1975.

Edward T. Dangel, III, Dangel & Smith, Boston, Mass., for plaintiff.

Edward A. Roster, Tweedy & Roster, Taunton, for Henry Guglielmo, Antoine Pereira, Robert Calvey, and William Gilbert, Commissioners of Taunton Municipal Lighting Plant; and John P. Gonzala, Manager of the Taunton Municipal Lighting Plant.

James N. Gabriel, U. S. Atty., Raymond V. Picard, Asst. U. S. Atty., for HUD employees, Carla A. Hills, H. R. Crawford, and William H. Hernandez.

### MEMORANDUM and ORDER

CAFFREY, Chief Judge.

This is a civil action brought pursuant to 12 U.S.C.A. § 1701 *et seq.*, 28 U.S.C. A. § 1361 and 42 U.S.C.A. §§ 1983, 1985. Plaintiff Taunton Gardens (TG) is a Massachusetts limited partnership whose general partner is Max Kargman. Defendants are Carla A. Hills, Secretary of the Department of Housing and Urban Development, two individual members of that agency, the commissioners of the Taunton, Massachusetts Municipal Lighting Plant (TMLP) and the manager of TMLP. The matter came on for hearing on plaintiff's application for a temporary restraining order against a proposed July 3, 1975 termination of electrical services to plaintiff TG by defendant TMLP. Plaintiff also asks for a temporary restraining order against TMLP collecting tenants' rent payments as authorized by M.G.L.A. c. 164, § 124D prior to the holding of a hearing by an independent body to determine the amount due from TG to TMLP for electrical services already supplied.

For purposes of ruling on this motion, I assume the existence of jurisdiction under 42 U.S.C.A. § 1983 as alleged.

It is well settled in this Circuit that in order to qualify for injunctive relief the party seeking same must establish the probability of ultimate success on the merits of the controversy and the probability that it will suffer irreparable harm unless such injunctive

relief is granted. *Automatic Radio Mfg. Co.* v. *Ford Motor Co.*, 390 F.2d 113, 115 (1 Cir. 1968).

The present state of the record before this Court indicates that TG has been in arrears in the payment of its electricity bill for some months. In fact, as of April 2, 1975 its accrued arrearage was in the amount of $49,019.34. During the period of arrearages, William Kargman, son of the plaintiff's general partner, acting as a representative of TG, met several times with the management of the electricity company. Indeed, top management of plaintiff and defendant have been negotiating over a six month period in an effort to solve the problem of plaintiff's tardiness in paying this bill.

Max Kargman, plaintiff's general partner, met with the TMLP commissioner on April 27, 1975 and discussed possible alternative arrangements for paying the arrearages. On May 5 one Cargill, a representative of plaintiff, met with TMLP officials for further discussion of the problem. On June 13, 1975, apparently for the first time, Max Kargman sent a letter to the management of TMLP claiming "there is a dispute as to the accuracy of the bill for electricity . . . ."

During the past six months TMLP followed its normal three month notice period practice under which in successive months it informs the customer first, of the charges, second, of the arrearages, and third, of the proposed termination date. Pursuant to this procedure, TMLP sent a letter on June 13 to all tenants in plaintiff's apartment complex advising them that they "have a right to pay the amount due and thereby avoid a cessation of service, and to recover the amount so paid from the person to whom [the tenant] would otherwise pay [his/her] rent."

In *Baldwin* v. *Hale*, 68 U.S. (1 Wall.) 223, 233, 17 L.Ed. 531 (1863), the Supreme Court stated that under procedural due process "[p]arties whose rights are to be affected are entitled to be heard; and in order that they may en-

joy that right they must first be notified. Common justice requires that no man shall be condemned in his person or property without notice and an opportunity to make his defence." The Court also ruled that the procedural due process "can vary depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Boddie* v. *Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). The court has also told us that the notice and hearing must be "appropriate to the nature of the case." *Mullane* v. *Central Hanover Bank and Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

On the facts of this case, plaintiff has received adequate notice of the fact of its arrearages, has had ample opportunity to request a hearing and has, in fact, had a number of conferences with top executives of defendant. The hearing is not required to be held by an impartial examiner. *Lucas* v. *Wisconsin Electric Power Company*, 466 F.2d 638, 651 (7 Cir. 1972), *cert. den.* 409 U.S. 1114, 93 S.Ct. 928, 34 L.Ed.2d 696 (1973). TMLP has provided plaintiff with separate meetings with a commercial representative, with the chief accountant and finally with the TMLP Commissioner.

I rule that taken together these meetings constitute a "personal hearing . . . conducted by an employee in a management position . . . who is in a position to mediate the dispute, and who is at least sufficiently removed from the internal corporate business and affairs which might prejudice a fair decision." *Palmer* v. *Columbia Gas of Ohio, Inc.*, 479 F.2d 153, 168–69 (6 Cir. 1973).

On this state of the record I find that what faces TG if defendant terminates electricity service directly to TG and commences to deal individually with the tenants is a probable loss of rental income to TG.

I also find that prior to this happening, if it does, plaintiff has received more than adequate prior warnings of

this possibility and an opportunity to be heard thereon.

 I further find that plaintiff has failed to demonstrate a probability of irreparable harm if denied injunctive relief, since money damages are not normally irreparable harm. I further find that plaintiff can not rely on the claim that it is acting for tenants, who arguably may suffer irreparable harm, since tenants have been afforded a vehicle by which they may avoid the shut-off of electric power.

I further rule that plaintiff also has failed to establish a probability of ultimate success on the merits against either the federal or state defendants. Accordingly, the motion for a temporary restraining order is denied.